Dayra RIVERA, et al., Plaintiffs,

v.

KMART CORPORATION, Defendant.

No. Civ. 99–1457(JP).

United States District Court,
D. Puerto Rico.

Jan. 27, 2000.

Guillermo J. Ramos–Luiña, Hato Rey, P.R., for plaintiff.

Gregory T. Usera–Macfarlane, Schuster Usera Aguilo & Santiago, San Juan, P.R., for defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court has before it Plaintiffs' motion to compel production of documents against Defendant Kmart (**docket No. 38**); Defendant's opposition thereto (docket No. 49); Plaintiffs' Motion to supplement its motion to compel (**docket No. 52**); and Defendant's opposition thereto (docket No. 54).

During the Pretrial Conference held on January 19, 2000, the Court ordered Defendant to bring to chambers several documents the production of which it had objected, mostly under the attorney-client privilege. Therefore, besides the motions *sub judice*, the Court will also rule on whether or not the documents in question are privileged.

## II. PARTIES' POSITIONS

Plaintiffs contend that Defendant Kmart waived any evidentiary privileges it may have with regards to documents they requested in June of 1999. In particular, Plaintiffs argue that the objections Kmart raised to the request for production of documents are untimely and therefore waived because all four letters Kmart sent in response to Plaintiffs' request came more than 30 days after the

request. Plaintiffs also state that Defendant's objections are general and vague and therefore fall below the standard of specificity for objections required by Rule 34 of the Federal Rules of Civil Procedure.

Defendant counters that their objections were not untimely because the documents objected to had not been identified within the 30-day period to respond. According to Kmart, the documents produced and objected to after the 30 days had elapsed involved an ongoing investigation of Kmart employees in connection with the insurance claims after Hurricane Georges which were surfacing along the way. Defendant reasons that it could not have objected to documents which had yet to be identified and therefore their objections were not part of an effort to produce or object to documents in a piecemeal fashion, but rather part of an effort to supplement evidence as required by Rule 26(e). Defendant also contends that its objections were specific enough to comply Rule 34(b).

## III. DISCUSSION

### A. Timeliness and Specificity of Defendant's Objections

■ The timing and specificity of an objection are of the essence when it comes to asserting a privilege during discovery. Rule 34(b) of the Federal Rules of Civil Procedure requires the party upon whom a request for production of documents is made to respond to the request in writing within 30 days after being served. Rule 34(b) adds that the response "shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated." Fed.R.Civ.P. 34(b). Rule 26(b)(5) states that,

> [w]hen a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to

assess the applicability of the privilege or protection.

Fed.R.Civ.P. 26(b)(5). If the responding party fails to timely object or state the reason for the objection, he or she may be held to have waived any objections. *See Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir.1991). Therefore, the objecting party must be specific enough in its objections to support its privilege, but not too specific so as to divulge privileged information.

■ A party's slip, however, will not necessarily short-circuit his or her efforts to preserve a privileged document confidential. A party's failure to properly or timely object does not result in an automatic waiver. *See Applied Systems, Inc. v. Northern Insurance Co. of New York*, No. 97 C 1565, 1997 WL 639235, *2 (N.D.Ill. Oct. 7, 1997). A waiver is a serious sanction to be imposed in cases of "unjustified delay, inexcusable conduct, bad faith or other flagrant violations." *Id.* Cases where there have been "minor procedural violations, good faith attempts at complying, and some notice to the opposing party of the privilege objections; … [and] other cases involving non-flagrant discovery violations where the requested documents are plainly protected by a privilege" do not result in waiver of the privilege. *Id.* Thus, the circumstances surrounding the objections must be weighed in determining whether the documents are to be produced or kept outside of the scope of discovery.

A party which is served with a request for production and does not necessarily waive its objections if the documents sought have not been identified within the 30 days after the request. Rule 26(e), which requires a party to supplement or correct a disclosure or response to include information thereafter acquired, makes it evident that some documents may not be readily available for production within 30 days of being requested. The party producing the documents is under a duty to supplement at appropriate intervals if he or she learns that in some material respect the information is incomplete or incorrect and if the additional or corrective information has otherwise been made known to the other parties. *See* Fed.R.Civ.P. 26(e).

■ The letters objecting to the documents in question were simultaneous with supplementary production of documents and are dated between May of 1999 to December of 1999. The Court finds that, despite the fact that some of the documents antedate Plaintiffs' request for production, their relevance and responsiveness to Plaintiffs' request may not have been known by Kmart and their attorneys. After all, although knowledge of the existence of these documents refers to the party's knowledge, it is the lawyer who understands the significance of these documents and "bears the responsibility to bring answers up to date." Fed. R.Civ.P. 26(e) advisory committee's note. The Court does not have any reason to believe that these documents were knowingly concealed by Kmart's attorneys, especially given the proximity in time between the request for production and the date of these documents. Thus, the Court does not find that Kmart engaged in untimely objections or piecemeal discovery, but rather in supplementing discovery and raising objections to those documents that were surfacing along the way. Thus, Kmart's objections will not be deemed waived for untimeliness.

■ With regards to specificity, the Court finds that Kmart's objections were not blanket or vague objections. Asserting a general objection to a request for production of documents does not comply with Rule 34(b) of the Federal Rules of Civil Procedure. *See High Tech Communications, Inc. v. Panasonic Co.*, Civ. A. No. 94–1477, 1995 WL 133344, *2 (E.D.La. Mar. 24, 1995) (citing *Marx*, 929 F.2d at 12; *Eureka Financial Corp. v. Hartford Accident & Indemnity*, 136 F.R.D. 179, 184 (E.D.Ca.1991)). Determining whether a party has waived a privilege due to lack of specificity "requires the Court to consider the circumstances surrounding the assertion of a general objection to the production of the privileged documents for at times 'the blanket objection will be made for slothful reasons [while] at other times there may exist an arguable reason why a specific identification of the document to which a privilege applies cannot be made.'" *Id.* (citing *Eureka Financial Corp.*, 136 F.R.D. at 184).

■ In the instant case, Plaintiff served upon Kmart a Request for Production of Documents on June 1, 1999, which was subsequently expanded by letter dated June 24, 1999. Plaintiff's request sought the production of "[e]ach and every report any other document evidencing the investigations conducted by Kmart and its employees that resulted in plaintiffs' termination." Defendant responded on July 7, 1999, and did not raise any objections at the time. By letter of August 31, 1999, Defendant objected to seven documents "on a claim of privilege." At that time Defendant, by its counsel, itemized each document objected to by identifying its date, author, and recipient. The dates of the identified documents ranged from May 5, 1999 to May 10, 1999. Kmart stated that those documents "were prepared at the request of counsel and were only provided to high corporate officials and Kmart attorneys." On September 10, 1999, counsel for Kmart sent a letter to Plaintiffs' counsel raising attorney-client privilege objections with regards to five documents, which were described by date, author, and recipient. On October 19, 1999 and December 29, 1999, Kmart's counsel sent letters to Plaintiff's counsel raising the objection of "privilege" and describing the documents with as much specificity as the previous letters. To have done more would have resulted in divulging confidential information.

The Court finds that the objections were specific enough and not "blanket objections." Although Defendant raises the objection of "privilege" regarding several of the documents, in view of the description of the documents, it is evident that such objection relates to attorney-client privilege.

### B. Attorney–Client Privilege

■ Having determined that the Defendants have not waived the attorney-client, the Court must determine whether the documents at issue are in fact privileged. The attorney-client privilege protects "confidential disclosures by a client to an attorney made in order to obtain legal assistance." *U.S. Postal Service v. Phelps Dodge Refining Corp.*, 852 F.Supp. 156, 160 (E.D.N.Y.1994) (citing *Fisher v. United States*, 425 U.S. 391,

96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). One of the purposes of the attorney-client privilege is to encourage candid and free communication between clients and attorneys and not discourage clients from revealing potentially damaging information to their attorney. *See United States v. Rakes*, 136 F.3d 1, 3 (1st Cir.1998); *Kevlik v. Goldstein*, 724 F.2d 844, 849 (1st Cir.1984). The privilege is justifiable if it furthers its underlying principles and its applicability is not to be determined in a mechanical fashion. *See In Re Miracle Enterprises, Inc.*, 40 B.R. 503, 506 (Bankr.D.R.I. 1984). In particular, a party will be protected by the attorney-client privilege:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communication relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except protection be waived.

*U.S. Postal Service*, 852 F.Supp. at 160 (citing *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1036 (2d Cir.1984)). The burden of establishing each element of the privilege rests on the raising the objection, in this case Defendant. *Id.* (citing *In re Horowitz*, 482 F.2d 72, 82 (2d Cir.); *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 145 F.R.D. 298, 301 (E.D.N.Y. 1992)). Kmart has included 16 documents for the Court's *in camera* review over which it is objecting on the basis of attorney-client privilege.

### 1. Documents 1, 2, 3, 4, 5, 6, and 7

The documents tabbed 1 through 7 are communications from individuals outside of Kmart's "control group" with Kmart attorneys. Therefore, the Court must determine whether the individuals who communicated with the attorneys can be considered corporate clients.

■ Because a corporation acts through its officers, determining whose communications are the corporation's as client is an important issue. A person's authority to speak or act on behalf of a corporation, however, will generally be a function of that person's position. When it comes to attorney-client privilege, however, communications coming from middle or low level employees may also be privileged. *See Upjohn v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). In *Upjohn*, the Supreme Court did away with the "control group" test which limited the attorney client privilege to confidential communications made between attorneys and officers authorized to make decisions for the corporation. The *Upjohn* Court expanded the privilege to cover communication made by employees, who have the information necessary for the corporate counsel to advise his or her client, and the corporation's attorney.

In Documents 1 through 7, the author of the communication is Nolan Bomar, Kmart's Regional Director of Loss Control. Although Kmart has not proffered any arguments with regards to Bomar's authority within the company, it appears that, as an investigator in charge of Kmart's Hurricane Georges insurance claims, he possessed information which was necessary for Kmart's lawyers. This knowledge is made relevant in the objected documents. Thus, the Court finds that the communications in which Bomar was involved can be considered as coming from the client under the *Upjohn* test. Therefore, the requirement that the communication be made by a client is met. *See generally United States v. United Shoe Mach. Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950) (Wyzanski, J.).

■ Having established that these seven documents came from the corporate client, the Court must determine whether they were addressed to the client's attorney. In cases, such as this one, which involve communications between a corporate client and in-house attorneys, the Court must be especially careful in its analysis. The fact that an in-house counsel holds a law degree does not automatically protect every communication in which he or she is involved with his or her corporation. *See Exxon Research & Engineering Co. v. United States*, 44 Fed.Cl. 597, 603 (1999). In order to consider the communications between in-house counsel and a corporate client as privileged, the former had to be

acting as an attorney. *See In re Sealed Case,* 737 F.2d 94, 99 (D.C.Cir.1984).

██ The Court finds that Peter Palmer, the in-house counsel who received the information from Bomar, was acting as an attorney when he received these seven documents. Kmart has stated in its table of privileged documents that the purpose conveying these seven documents was to obtain legal advice. Furthermore, upon review of the documents, the Court finds that the subjects discussed therein, are consistent with giving subsequent legal advice. In addition, the fact that these documents were sent to outside counsel indicates that the purpose of creating the communications was to obtain legal advice. In view of the above, and because there is no indication that the communications were not confidential and, therefore, not waived, the Court finds that documents 1 through 7 are privileged.

### 2. Documents 8, 9, 10, and 12

Documents tabbed 8 through 12 are communications between attorneys. Except for documents 10 and 12, which are communications from outside counsel to Kmart's legal department, all of the documents are similar to documents 1 through 7 in that they were sent to Peter Palmer of Kmart's legal department, and are, therefore, privileged.

The Court finds that the conditions surrounding documents 8, 9, and 11 are the same as for those involving documents 1 through 7. There is no indication that the documents sent to Palmer were unrelated to his role as an attorney for Kmart and the subject of these documents deal with issues over which legal advice would be given.

 As for Documents 10 and 12, which are letters from outside counsel to in-house counsel Peter Palmer, the Court finds that these documents are privileged because they render legal opinions. The attorney-client privilege extends to an attorney's communications with his client as there is a need to "ensure against inadvertent disclosure, either directly or by implication, of information which the client has previously confided to the attorney's trust." *Coastal States Gas*

*Corp. v. Dept. of Energy,* 617 F.2d 854, 862 (D.C.Cir.1980). The subject matter of documents 10 and 12 deal with issues pertaining to previous communications made by Kmart to counsel, which are privileged.

### 3. Documents 13, 14, and 15

Documents 13 and 14 are from Nolan Bomar, the Regional Director of Loss Control, to Kmart's outside counsel. Document 15 is a memorandum from Ben Guffey to Kmart's Legal Department. Like the documents 1 through 12, these communications comply with the requirements set forth above, but more importantly pertain to matters that are in line with the purpose underlying the attorney-client privilege: allowing the client to speak freely with its attorney.

### 4. Document 16

The objection raised with Document 16 presents different questions that the ones tackled above. The instant discussion pertaining to Document 16 addresses Plaintiffs' Motion to supplement its motion to compel (docket No. 52) and Defendant's opposition thereto (docket No. 54). Plaintiffs argue that Kmart waived its claim of attorney-client privilege concerning documents involving the interview of Elvin González, Kmart's Rio Hondo Store Manager, by using the content of these documents to support their position that, besides Plaintiffs, Kmart investigators have been unable to confirm any wrongdoing from any of other Kmart managers with regards to the intentional destruction of merchandise. In its reply to Plaintiffs' Opposition to summary judgment, Kmart cites to an unsworn statement made under penalty of perjury by Nolan Bomar, to support its position that Kmart has not been able to confirm any wrongful destruction of merchandise by managers other than Plaintiffs. In this unsworn statement, Bomar states that during the insurance audits, Elvin González was the store manager at the Kmart Rio Hondo Store and that he was on Workers' Compensation Leave from April 9, 1999 to September 27, 1999. Bomar adds that Kmart investigators interviewed him on December 14, 1999. By citing to Bomar, who makes reference to González's interview,

Plaintiffs suggest that Kmart is using the contents of the documents pertaining to the interview as a sword to support its position pertaining to Plaintiffs' termination and the privilege of attorney client privilege as a shield to avoid their discovery.

■ A litigant cannot use the attorney-client privilege as both a "sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion." *Frontier Refining, Inc. v. Gorman–Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir.1998). Therefore, the Court must determine whether Kmart relied on the document pertaining to Elvin González's interview to prove that Kmart has not been able to confirm any wrongdoing.

■ If Kmart is relying on the fact that Kmart investigators interviewed Elvin González to support, at least in part, its position that no other wrongdoing related to Hurricane Georges insurance claims has been confirmed by Kmart, the contents of the interview are essential to determine whether or not Kmart's position is tenable. Defendant alleges that what dictated its decision to fire Plaintiffs was their involvement in the destruction of merchandise to be included in an insurance claim.[1] Plaintiffs counter that what drove Kmart's decision to terminate them was their testimony to the authorities that they received instructions from their supervisors to damage merchandise to include in the insurance claim. Therefore, Defendant's claim requires examinations of those communications that would add or subtract credence from their position. *See U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications.").

Although the Court is not weighing its probative value, after reviewing the document which Kmart claims to be privileged and identified as Document 16, the Court finds that its contents are directly relevant and central to the issue of Kmart's reasons for dismissing its employees in connection with the Hurricane Georges insurance claim. In view of its relevance and connection with Kmart's allegations pertaining to the process of terminating its employees, the Court concludes that Kmart used the contents of the interview as a sword, albeit a dull one, to support its position and at the same time has attempted to cloak itself with the attorney-client privilege. Because of its waiver, Defendant is hereby **ORDERED** to produce the December 17, 1999 Memo to File of Benjamin A. Guffey, included in the materials submitted for the Court's in camera review under Tab 16.

## IV. CONCLUSION

In view that documents 1 through 15 are privileged under the attorney-client privilege and Defendant did not waive said privilege with regards to those documents, the Court hereby **DENIES** Plaintiff's motion to compel production (docket No. 38). Defendant, however, waived its attorney-client privilege by using document 16 as both a sword to support its position, while attempting to cloak itself with an objection to produce the document. Thus, the Court hereby **GRANTS** Plaintiffs' motion to supplement its motion to compel (docket No. 52) and **ORDERS** Defendant to produce Document 16 to Plaintiffs on or before **January 31, 2000**.

**IT IS SO ORDERED.**

---

1. Kmart states that, unlike the Plaintiffs, the employees who have not been fired did not go as far as participating in the damaging of merchandise. Kmart adds that some of these employees included questionable merchandise in the insurance claim, a different act from intentionally damaging merchandise. The Court, however, noted that this distinction was not well drawn by Defendant in its summary judgment motion and is a question for the jury, especially, because the guidelines, which Kmart cites as having been violated by Plaintiffs, are somewhat broad in reach and presumably could be interpreted as extending to cover behavior short of damaging merchandise but including false information in the insurance claim.