[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Decision
Before the Court is the Cipriani plaintiffs' ("Plaintiffs") motion for sanctions. At issue is the often deployed pretrial discovery tactic of seizing upon a narrow but objectionable aspect of an otherwise legitimate discovery request in order to avoid providing any response at all, until compelled to do so through added proceedings or the threat of added proceedings. Also at issue is the question of civility in the practice of law.
On June 10, 2003, pursuant to S.Ct.R.Civ.P. 34, Plaintiffs served defendant Rhode Island Hospital with a document entitled "Request for Production of Documents to Defendant, Rhode Island Hospital." The requests contained therein were numbered 1 through 26. On June 25, 2003, well within the 40 day response period provided by S. Ct. R. Civ. P. 34(b), defense counsel of record, David W. Carroll, for the law firm Roberts, Carroll, Feldstein, Pierce, Inc., responded with objections. Although Mr. Carroll responded to each and every request, he objected to all. Of the 26 requests, he objected to 21 as overbroad and harassing . . . without an explanation as to any, save one — and to five as seeking privileged material, though no privilege logs were submitted in accordance with S. Ct. R. Civ. P. 26(b)(5). In addition to setting forth his objection, Mr. Carroll included a warning in the form of a "notice" stating that if Plaintiffs sought production of any of the items requested, and "if even partial compliance is required," defendant would seek to impose the costs upon Plaintiffs. A copy of the response is attached hereto.
On July 17, 2003, Plaintiffs filed a motion to strike, to compel production, and for expenses and sanctions, arguing that the response was evasive, not in good faith, and insulting. The motion was styled as one made pursuant to S. Ct. R. Civ. P. 11[1] and 37. The motion also attempted to explain those parts of the response that Plaintiff deemed insulting. Along with the motion, Plaintiffs, on July 16, 2003, mailed a letter to Mr. Carroll stating that the former "will be happy to pass the motion" if compliance with the production request was made.
Rather than respond to Plaintiffs' July 16, 2003 letter, for example, by way of partial compliance, by way of a formal or informal attempt to seek additional time, or by way of an attempt to seek compromise, Mr. Carroll ignored it and, instead filed an objection, stating as grounds that Plaintiff had not attempted in good faith to seek compliance with the request before filing the motion.
On the day before the first hearing, i.e., August 5, 2003, Plaintiffs' attorney placed a telephone call to Mr. Carroll's firm in which the issue of the pending motion was raised with Mr. Carroll's junior associate. Mr. Carroll, however, refused to waiver. Rather than provide any of the requested materials or request additional time in which to compile responsive materials, Mr. Carroll chose to tax Plaintiffs, as well as the court system, by proceeding to hearing on the motion.[2]
The motion was heard on August 5, 2003. Mr. Carroll did not appear but sent his junior associate in his place. The young associate was ill-equipped for the task of defending Mr. Carroll's multiple objections. As was revealed subsequently, the associate had spent less than an hour investigating the basis for the objections, (Tr. at 37 (Oct. 3, 2003)) which time was, concededly, spent in doing little more than discussing the matter with Mr. Carroll. Id. The hearing was rescheduled to August 20, 2003 so that Mr. Carroll could appear to represent his objections.
At the August 20 hearing, it was established that Mr. Carroll's firm was in the process of sifting through materials for discovery and had already prepared logs for the privileges claimed in the original objection. (Tr. at 2-3 (Aug. 20, 2003)). At the conclusion of the hearing the Court struck Mr. Carroll's objections as originally filed but granted him additional time to prepare adequate responses and objections — notwithstanding that the Court could have deemed the objections waived.See infra. At that hearing, Plaintiffs orally modified their request for sanctions to seek a nominal fee of $1, rather the full amount of attorney's fees.[3]
Mr. Carroll filed supplemental responses to the discovery request on August 21 and August 29, 2003. Subsequently, a third hearing was had on October 3, 2003 to review the adequacy of the supplemental response and to address the motion for sanctions. At that hearing, Plaintiffs agreed that the supplemental responses appeared to be adequate but reserved the right to compel additional supplemental responses should further inquiry reveal the responses to be lacking. The parties then argued the motion for sanctions. It was at this point that Mr. Carroll attempted to blame-shift by quarrelling over the substance of his associate's conversation with Plaintiffs' counsel and pointing to Plaintiffs' counsel's alleged lack of good faith.
 Analysis
The scope of discoverable information is delineated in S. Ct. R. Civ. P. 26(b)(1). This section — which copies its federal counterpart verbatim — provides in relevant part:
 "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if information sought appears reasonably calculated to lead to the discovery of admissible evidence."
Early pronouncements of the U.S. Supreme Court have provided the touchstone for interpreting the discovery rules and a party's obligations thereunder. "`Discovery' is one of the working tools of the legal profession. . . . It seems clear and long has been recognized that discovery should provide a party access to anything that is evidence in his case." Hickman v. Taylor, 329 U.S. 495, 515, 91 L. Ed. 451,67 S. Ct. 385 (1947) (Jackson, J., concurring). The Supreme Court has stated that "modern instruments of discovery serve a useful purpose. . . . They together with pretrial procedures make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Procter Gamble Co., 356 U.S. 677, 682, 2 L. Ed. 2d 1077, 78 S. Ct. 983 (1958). Thus, "civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial. . . . The deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of `fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." Id. at 501, 507.
 A) Mr. Carroll's June 25, 2003 Objections of Overbreadth Were Boilerplate, Unsubstantiated and in Violation of Rules 26(b)(1) and 26(f)(1) (2)
Consistent with the goal that discovery provide the parties with all relevant information, the party resisting production bears the burden of establishing lack of relevancy or undue burden. See Oleson v. KmartCorp., 175 F.R.D. 560, 565 (D. Kan. 1997) ("[t]he objecting party has the burden to substantiate its objections") (citing Peat, Marwick, Mitchell Co. v. West, 748 F.2d 540 (10th Cir. 1984), cert. dismissed,469 U.S. 1199 (1985)); accord G-69 v. Degnan, 130 F.R.D. 326, 331
(D.N.J. 1990); Flora v. Hamilton, 81 F.R.D. 576, 578 (M.D.N.C. 1978);Alexander v. FBI, 192 F.R.D. 50, 53 (D.C. 2000); Burns v. Imagine FilmsEntertainment, 164 F.R.D. 589, (W.D.N.Y. 1996); National Beef PackingCo., L.P. v. Southern Pac. Lines, 1997 U.S. Dist. LEXIS 17793 (D. Kan. 1997); Thompson v. Glenmede Trust Co., 1993 U.S. Dist. LEXIS 17070 (E.D.Pa. 1993); Cadrin v. Trans Spec Truck Serv., Inc., 17 Mass. L. Rep. 121 (Ma. Super. 2003). The "mere statement by a party that the interrogatory [or request for production] was `overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection." St. Paul Reinsurance Co. v. Commer. Fin. Corp., 198 F.R.D. 508,511-12 (N.D. Ia. 2000) (citing Josephs v. Harris Corp., 677 F.2d 985, 992
(3d Cir. 1982) (quoting Roesberg v. Johns-Manville Corp., 85 F.R.D. 292,296-97 (E.D. Pa. 1980))). See also Oleson, 175 F.R.D. 560 at 565 ("[t]he litany of overly burdensome, oppressive, and irrelevant does not alone constitute a successful objection to a discovery request") (citation omitted). "On the contrary, the party resisting discovery `must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive.'" Id. at 512 (citing Josephs 677 F.2d at 992 (quotingRoesberg, 85 F.R.D. at 296-97)). See also Oleson, 175 F.R.D. 560 at 565 ("[t]he objecting party must show specifically how each discovery request is burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden"); Cipollone v. Liggett Group, Inc.,785 F.2d 1108, 1121 (3d Cir. 1986) (holding that it is not sufficient to merely state a generalized objection, but, rather, objecting party must demonstrate that a particularized harm is likely to occur if the discovery be had by the party seeking it); Degnan, 130 F.R.D. at 331
(D.N.J. 1990) (same).
Of the 26 requests for production made upon Rhode Island Hospital, Mr. Carroll objected to 21 on the sole grounds that the questions were overbroad and harassing. This Response merely asserted boilerplate objections that the discovery sought is "exceptionally broad and harassing," without specifying how each request for production was deficient and without articulating the particular harm that would accrue if they were required to respond to Plaintiff's discovery requests. Thus, Mr. Carroll's objections constituted little more than the blanket objections at issue in Limoges v. Eats Restaurant, 621 A.2d 188, 190
(R.I. 1993) (upholding an award of attorney fees for discovery violations after the plaintiff twice filed blanket objections to discovery requests and provided the requested documents to the defendants only upon a motion to compel), and did not suffice to sustain his burden of demonstrating that the discovery sought was outside the scope of S. Ct. R. Civ. P. 26(b)(1) because of overbreadth. Moreover and as previously indicated, when the initial hearing took place on August 6, 2003, Mr. Carroll (Tr. at 2, 7 (Aug. 20, 2003)) did not appear in Court in an attempt to substantiate the objections but, instead, sent an insufficiently prepared junior associate to respond to the task — thus raising the inference that Mr. Carroll's true objective was not to defend what he believed to be legitimate objections but, instead, to force the Plaintiffs to expend additional resources if they were to obtain their discovery.
The Court continued the August 6, 2003 until August 20, 2003 so that Mr. Carroll could appear. However, when faced with the prospect of having to explain himself at the continued hearing, Mr. Carroll began the task of compiling responsive materials. (Tr. at 2-4 (Aug. 20, 2003)); (Tr. at 50 (Oct. 3, 2003)) (Mr. Carroll's comments that "[w]e were concerned about the Court's reaction . . . I would be lying if I said we gathered documents that we believed need not be produced and we produced them, and that was an attempt to make a good showing before the Court")).
Thus, it was only after the initial hearing on the motion to compel and a threat of further action had Mr. Carroll begun to comply with the discovery requests.[4] Prior to Plaintiffs' incurring burden and expense of forcing compliance, Mr. Carroll's resistance amounted to a complete failure to provide materials responsive to these discovery requests. And, at the next hearing, although Mr. Carroll contended that his objections were made in good faith, he relied principally on grounds that were not made in the written objections, to wit, that the requests were relevant to a claim of negligent credentialing, but that no such claim was made by plaintiffs. Id. 7-9. Had Mr. Carroll made this allegedly good faith basis for his objections known to plaintiffs' counsel — either by including them within the response or by voicing the relevancy argument in response to the latter's letter of July 16, 2003 . . . the latter might have been better able to assess the validity of that objection, and the motion to compel, with all the costs associated therewith, might have been avoided.
Interestingly, the idea of "good faith" in discovery was featured in Mr. Carroll's objections. That is, to nine of the twelve objections based upon overbreadth, Mr. Carroll seized upon the breadth of the request to avoid making a response, adding that they were so broad that "good faith compliance could never be assured."[5] However, as already indicated, Mr. Carroll did not make any attempt, in good faith or otherwise, to comply with Plaintiffs' discovery requests prior to the time he was ordered to appear to defend his objections but, instead, attempted to justify his complete lack of compliance with this unsupported assertion. In fact, Mr. Carroll was adamant that the only duty was that upon the requesting party to frame the question precisely. (Tr. 40-41, 45 (Oct. 3, 2003)).[6] However, much like a fisherman's net, with the interstices appropriately sized for the desired catch, a modern discovery request must necessarily be framed broadly enough to capture all relevant information. Thus, though "parties who promulgate improper discovery requests are not entitled to send their victims scurrying to see if the requested documents exist before any objection to such requests can be certified," D'Amario v. State, 686 A.2d 82, 86 (R.I. 1996), in the exercise of good faith, a responding party may not merely seize upon the slightest technicality or imprecision in drafting in order to withhold clearly discoverable material — known to exist and within its possession[7] — with the hope that relevant material will escape the mesh of a more detailed question.[8]
Rather than exercise good faith by sifting through the documents within his client's possession, by seeking an extension of time to do so, or by conferring with opposing counsel for the purpose of addressing any legitimate concerns he may actually have had about the breadth of the requests, it was Mr. Carroll's admitted policy to first "preserve my objections, and then if things can be worked out, we work them out." Id.
at 40-41. Consistent with that policy, Mr. Carroll objected to each and every request and did so within 15 days of receiving the motion. But, although ample time was left to attempt compliance, move for an extension of time in which to respond, or to attempt meaningful conferral with Plaintiffs' counsel, Mr. Carroll made no effort to work things out. Had Mr. Carroll actually exercised the second prong of his purported policy instead of standing behind a gauntlet of objections backed by a threat of sanctions for any attempt at enforcement, Plaintiffs' motion to compel may have been avoided. Instead, Mr. Carroll ignored Plaintiffs' letter of July 16, 2003, brushed aside their call of August 5, 2003 and sent an associate who had little or no involvement in preparing the objection to defend it; and, when finally called to explain the objection, attempted to do so on grounds never made known to Plaintiffs, thus necessitating not only the motion and Plaintiffs' costs in relation thereto but also the subsequent compliance hearings.
Accordingly, this Court finds that Mr. Carroll's objections of overbreadth were made in violation of S. Ct. R. Civ. P. 26(b)(1) and thus signed in violation of S. Ct. R. Civ. P. 26(f)(1). The Court further finds that Mr. Carroll's objections for overbreadth were designed to cause delay and needless increase in the cost of litigation, in violation of S. Ct. R. Civ. P. 26(f)(2).
 B) Mr. Carroll's June 25, 2003 Assertions of Privilege Were In Violation of Rules 26(b)(5) and 26(f)(1)(2)
Of the remaining five requests, Mr. Carroll objected to four on the grounds of privilege. However, those responses were in clear violation of S. Ct. R. Civ. P 26(b) (5) and 26(f)(1).
To Request # 9, which sought copies of all reports or memorandum "filed by this defendant with any state or local agency," Mr. Carroll responded by stating only that the information sought "if it exists, would be privileged." He did not identify either what privilege was claimed or "the nature of the documents . . . or things not produced or disclosed. . . ."[9] S. Ct. R. Civ. P. 26(b)(5). No privilege log or similar explanation accompanied the response.
To Request # 22, in which Plaintiffs requested "all pictures, videotapes, audiotapes and/or any other unwritten record that pertains to the care of plaintiff or her family and/or any evaluation of the care of Luigi Cipriani," Mr. Carroll objected on the grounds of peer review privilege. As with his objection to Request #22, this objection was posited without a privilege log or other explanation and without identifying the nature of documents it may have had in its possession and to which the claimed privilege attached. Furthermore, Mr. Carroll's response did not address the first part of the request — a natural reading of which is that it sought "unwritten records" reflecting medical care that plaintiff and her family received . . . except to object that "the content of [the request] illustrates just how little thought went into drafting the Request." (See infra.).
Request # 23 sought "any and all inpatient/outpatient records that document or in any way record any meeting, discussion, communication or contact of any kind between Defendant, its employees and agents and decedent Luigi Cipriani and/or Elena Cipriani." Despite the fact that the language used clearly indicates a request for records of interactions between decedent or his wife, Elena Cipriani, on the one side, and "Defendants, its employees and agents," on the other side, Mr. Carroll asserted numerous privileges, including peer review, attorney-client, and communications with insurance carriers. Once again, no explanation or log accompanied the response.
Finally, to Request # 24, which sought "[a]ll incident reports, occurrence reports or records of investigations pertaining to care and treatment of decedent Luigi Cipriani," Mr. Carroll asserted attorney-client privilege, work product privilege, insurance communications privilege, and the catch-all "privileges recognized under the law." Again, Mr. Carroll failed to provide any explanation or log.
"A party who withholds information that is `otherwise discoverable' by claiming that it is privileged or subject to protection as trial preparation material is required under S. Ct. R. Civ. P. 26(b)(5) to make this claim expressly and to describe `the nature' of the documents not produced or disclosed in a manner that will enable other parties to assess the applicability of the privilege or protection that is claimed."D'Amario 686 A.2d at 86, n. 11. Therefore, the objecting party must be specific enough in its objections to support its privilege and to provide a means to assess the claim. If a responding party fails to adequately state the reason for an objection, he or she may be sanctioned by being held to have waived the objections, including those based on privilege.See 8A Wright and Miller, Federal Practice and Procedure § 2213 (1994)Rivera v. Kmart Corp., 190 F.R.D. 298, 300 (D.P.R. 2000) (citing Marx v.Kelly, Hart Hallman, P.C., 929 F.2d 8, 12 (1st Cir. 1991). And cf.Taydus v. Cisneros, 902 F. Supp. 288, 297 (D.Ma. 1995) ("[a] party who withholds privileged documents that lie within the scope of Rule 26(a)(1)(B) without providing a brief description of the documents is subject to sanctions under Rule 37(c)"). Furthermore, failure to initially provide privilege logs will entitle the opposing party to costs under Rule 37(a)(4)(A). See Public Service Co. of NH v. Portland NaturalGas 218 F.R.D. 361 (D.N.H. 2003). Finally, where counsel completely fails to provide any privilege log, sanctions may be imposed pursuant to S. Ct. R. Civ. P. 26(f).[10]
Given Mr. Carroll's complete lack of explanation concerning the nature of the documents withheld and his failure to provide a means to support his privilege claim, Mr. Carroll's objections were made in clear violation of S. Ct. R. Civ. P. 26(b)(5) and thus signed in violation of S. Ct. R. Civ. P. 26(f)(1). And, given the overall circumstances as outlined herein, the Court further finds that Mr. Carroll's assertion of privilege were designed to cause delay and needless increase in the cost of litigation, in violation of S. Ct. R. Civ. P. 26(f)(2)
 C) Mr. Carroll's Conduct Warrants Relief and Sanctions Pursuant to Rules 11, 37(a)(4)A) and 26(f)
Seemingly, it should be axiomatic that although every legitimate objection may and ought to be made, a party should not be permitted to cast blanket and unsubstantiated objections in the hope that the opposing party will be unable or unwilling to meet the challenge of pursuing the matter further, either because of an ignorance of the law or facts, or because of a lack of resources or from sheer frustration with the process. Yet, disturbingly, Mr. Carroll's conduct as outlined herein, reflects a pattern of attempting to avoid, hinder and delay legitimate discovery requests and to overburden and harass opposing counsel purely as a tactical maneuver, thus implicating the need for deterrence.
Where an objection to discovery is not warranted by existing law, is motivated by an intent to harass, or is made as a dilatory tactic, sanctions are justified and warranted under S. Ct. R. Civ. P. 26(f).[11]
These sanctions have a twofold purpose: to deter repetition of the harm, and to remedy the harm caused. Cf. Michalopoulos v. C D Rest., Inc.,
2004 R.I. Lexis 92, 13 (quoting Lett v. Providence Journal Co.,798 A.2d 355, 368 (R.I. 2002).
Further, when a party files a motion to compel production which is granted — or subsequent to which production is voluntarily made . . . the Court may "require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees." S. Ct. R. Civ. P. 37(a)(4)(A)A sanction of costs will be avoided only if the Court finds that the motion was filed without a good faith effort to obtain the discovery without court action; that the nondisclosure, response, or objection was substantially
justified; or that other circumstances make an award of expenses unjust.Id. S. Ct. R. Civ. P. 37 sanctions are intended to "penalize those whose conduct may be deemed to warrant a sanction and deter those who may be tempted to engage in improper conduct. Fremming v. Tansey, 626 A.2d 219,221 (R.I. 1993) (citing National Hockey League v. Metropolitan HockeyClub, Inc., 427 U.S. 639, 643, 96 S. Ct. 2778, 2781, 49 L. Ed. 2d 747, 751
(1976) (per curiam)).
Finally, S. Ct. R. Civ. P. 11 provides that the signature of an attorney or a party on a pleading, motion or other paper constitutes a certificate by the signer that he or she has read it and "that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fat and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not imposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." S. Ct. R. Civ. P. 11. Rule 11 goes on to authorize any appropriate sanction, which may include an order to pay to the other party . . . the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee." S. Ct. R. Civ. P. 11.
As indicated, it is clear from the totality of the discovery response interposed by Mr. Carroll, together with the other evidence belying his intentions, that the discovery response was not substantially justified, that it was not made in good faith and that it necessitated the Plaintiffs' time and expense spent in enforcement proceedings. Mr. Carroll's unelaborated, boilerplate responses and unsubstantiated claims of privilege demonstrate the absence of a good faith effort to answer the requests,[12] despite the fact that at least some of the requests were valid. To the extent that any of Mr. Carroll's objections did have a valid basis, the utter lack of an explanation as to any of these impacts his credibility and belies an improper motive, i.e., to make the task of discovery a burdensome process for Plaintiffs — one not in accord with the liberal intent of the discovery rules. Compounding this, Mr. Carroll made no effort to respond to Plaintiffs' letter of July 16, 2003 seeking compliance with discovery.[13] Further, as stated, on the day prior to the first hearing, i.e., August 5, 2003, Plaintiffs' attorney placed a telephone call to Mr. Carroll's firm in which the issue of the pending motion was raised. Mr. Carroll, however, received that call with closed ears, choosing instead to pursue his objections to hearing, despite intending to do so via an unwitting associate who did not make the objections initially and was not familiar with the alleged bases therefor. The Court finds that Mr. Carroll's intent in interposing his objections after which he sent an unprepared representative to defend them, quite obviously, was to avoid compliance with discovery requests, to deter further efforts to enforce the discovery requests and, at the very least, to cause delay in compliance through improper means. The Court also finds that Mr. Carroll's protestations concerning good faithbad faith were disingenuous and pretextual.
Furthermore and putting aside the burden Mr. Carroll chose to impose on the Plaintiffs, their counsel and the Court, Mr. Carroll's ill-considered machinations cry out for deterrent measures for other reasons. First, Mr. Carroll put his own client at risk by exposing it to a situation in which principles of waiver[14] could have been applied and it might have found itself having to respond to discovery requests for which it had valid objections. Similarly, Mr. Carroll acted contrary to his client's interests by expending time, effort and, presumably, its money, in dodging legitimate discovery requests and delaying the very process that is designed to facilitate the speedy and just disposition of the controversies such as the ones Mr. Carroll's client was defending in this case. So, too, he acted contrary to his role as an officer of the Court and one who is bound to uphold the spirit of the rules of this Court and he did so by burdening not only the Plaintiffs and his client but also the Court and the numerous other litigants who appear before it. The Court finds this particularly disturbing in light of the medical community's purported belief that it is the victim of avaricious plaintiffs' lawyers, shoddy jurisprudence and stalled justice.[15]
Finally, there can be no doubt that Mr. Carroll is familiar with the overall requirements of and purposes behind civil discovery practice. More than a decade ago, in the Kelvey case, supra n. 6, Mr. Carroll, after taking the position that obstructing discovery in depositions was a fairly common occurrence, was deemed by the State of Rhode Island Supreme Court to be in clear violation of S. Ct. R. Civ. P. 26(b)(1) which sets out the Court's general provisions governing discovery and duties of disclosure. In Kelvey, the Court commented that the language of the Rule is so clear that there can be "no question about its meaning" and when on to uphold the trial court's imposition of a S. Ct. R. Civ. P. 37(a) discovery sanction. Id.
So, too, in Donegan v. Jackson, NC 2002-0625, a case currently pending before this Court on like issues, Mr. Carroll similarly responded to certain of that plaintiff's requests for interrogatories and for production of documents with unsubstantiated claims of privilege and baseless objections. In Donegan, it was only after motions to compel discovery and for sanctions[16] were filed did Mr. Carroll begin to cooperate by providing privilege logs; even then, however, Mr. Carroll delayed compliance by providing seriously inadequate logs and thereby forcing Plaintiff to go through the expense of several hearings on the matter. As with the instant matter, Mr. Carroll sent his young associate to the hearings; and, as here, the associate was unprepared to defend the objections. Given the similarity of Mr. Carroll's responses here and in Donegan, the latter provides additional support for the need to end Mr. Carroll's practice of objecting without first making a good faith inquiry into the merits of those objections and his practice of ignoring his purported policy of working things out after making his objections.
Finally, there is also evidence that at least portions of Mr. Carroll's response were aimed at harassment and designed to insult or annoy Plaintiffs and their counsel. As to this point, the Court notes, specifically, Mr. Carroll's response to Plaintiffs' Request #22, in which Plaintiffs requested "all pictures, videotapes, audiotapes and/or any other unwritten record that pertains to the care of plaintiff or her family and/or any evaluation of the care of Luigi Cipriani." Mr. Carroll responded, in part, that,
 "[o]bjection is made to this Request for Production insomuch as the content of same illustrates just how little thought went into drafting the Request. In substance, how can [one] produce a copy of `other unwritten' records."
Aside from being based upon an incorrect assumption,[17] this acerbic response is provocative and belies an antagonism beyond any required for the practice of law. It "completely disregards and undermines the efforts that [our Supreme Court] has initiated and encouraged in its attempts to promote civility in our courts." Clarke v. Morsilli, 723 A.2d 785, 786
(R.I. 1998) (sanctioning attorneys for preparing memorandum characterized by "intemperate statements and disrespectful tone" directed to the court). (Although a lawyer must be loyal and zealous in his or her representation of a client, "[a] lawyer should strive to attain the highest level of skill, to improve the law and the legal profession and to exemplify the legal profession's ideals of public service." SupremeCourt Rules of Professional Conduct: Preamble. See, also Rhode Island Bar Association Lawyer's Pledge.) Separate and apart from serving no valid purpose from a discovery perspective, Mr. Carroll's caustic response to Interrogatory 22 is unbecoming to his status as a senior member of the trial bar and is demeaning to the legal profession generally. The response reveals a lack of civility and suggests an overall theme of animosity and uncooperativeness underlying Mr. Carroll's objections and his necessitating Plaintiffs' motion to compel. So, too, the so-called "notice" that Mr. Carroll gratuitously affixed to the end of his objections was confrontational and evidences a combativeness beyond that which is necessary to effectively represent a client.[18] The notice was an affront to any practitioner familiar with the requirements of S. Ct. R. Civ. P. 11, 26(f) and 37(a)(4)(A) and it bordered on childishness. Given that both the notice and Mr. Carroll's comments directed at the author of the discovery request were outside of the scope of any of his objections to the requests for production — legitimate or otherwise — both the comments and the notice warrant scrutiny and response pursuant to S. Ct. R. Civ. P. 11.
Accordingly, Mr. Carroll's conduct in positing and pursuing objections that were not substantially justified, were motivated by improper purposes and were lacking in good faith and his conduct in including within his response papers statements and comments which were on their face improper and unjustified, all of which were in violation of S. Ct. R. Civ. P. 11, 37(a)(4)A) and 26(f), justifies sanctions in the form of compensation for Plaintiffs' costs and expenses incurred in pursuing their legitimate discovery requests.
 D) Mr. Carroll's Conduct Requires Sanctions Sufficient to Deter Comparable Conduct
In fashioning a sanction Courts are permitted to use a wide range of alternative possible sanctions for violation of the discovery rules.Doering v. Union County Board of Chosen Freeholders et al., 857 F.2d 191, 194 (3rd Cir. 1988). This Court is reminded, however, to impose the least sanction adequate to effectuate the purpose of the rule. Id; Young v.City of Providence, 301 F.Supp.2d 187, 197 (D.C.R.I. 2004.) While the rule presently directs the court to limit sanctions to "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated," each judge is largely free to impose the penalty of his or her choice. Thomason v. Lehrer, 182 F.R.D. 121, 131
(D.N.J. 1998); Lett v. Providence Journal Company, 798 A.2d 355, 368
(R.I. 2002) (A trial justice must have broad discretion to choose appropriate response to any fraudulent conduct committed by litigants); See generally, 5A Wright Miller, Federal Practice and Procedure:Civil § 1336.3 (2004). Thus, the trial court is vested with considerable discretion because of the authority given to the court by Rule 11's use of the word "appropriate." Schulze v. South Main Bank, 837 S.W. 2d 733
(Tex.App. 1992); Fed.R.Civ.P. 11 advisory committee notes to the 1997 amendments (The court has significant discretion in determining what sanctions, if any, should be imposed for a violation . . .)
The appropriateness of a particular sanction is primarily a function to two variables: the facts presented and the court's purpose in penalizing the errant party. Anderson v. Beatrice Foods Co., 900 F.2d 388, 394 (1st
Cir. 1990). Sanctions, under both Rules 11 and 37, serve dual purposes of deterrence and compensation. Id; Lett, 798 A.2d at 368. As such, trial justices must be free to create appropriate remedies to address misconduct that occurs in the court of litigation before them. Lett,798 A.2d at 368. However, the Court may also consider past conduct of the offending party when fashioning an appropriate sanction. Lockheed MartinEnergy Systems, Inc. v. Slavin, 190 F.R.D. 449, 459 (E.D. Tenn. 1999). Thus, a court may take into consideration an attorney who has repeatedly and flagrantly behaved in a manner that reflects a callous disregard for the proper and efficient functioning of the court. Id. As well, the Court may consider an attorney whose behavior reflects a sense of disrespect for the authority of the judicial system and the obligations of the legal profession. Id. Accordingly, a court may take into consideration the effect of the offending party's behavior on the public. See Id.
 Conclusion
Given the history of this case, Mr. Carroll's standing as a senior member of the bar, his history and pattern of engaging in discovery abuses and the negative impact this conduct necessarily has upon the parties, the judicial system and the general public, the Court finds there is a need for a measure of deterrence and, also, that Plaintiffs are entitled to be compensated for the full amount of their costs and expenses incurred in pursuing their legitimate discovery requests. However, given Plaintiff's counsel's request for minimal monetary sanctions and noting that a published decision concerning an attorney's conduct can be a powerful deterrent to future abuses — especially when published simultaneously with a parallel decision involving nearly the same issues — this Court finds that the imposition of a nominal sanction is sufficient.
For the foregoing reasons, an award of sanctions in the amount of $1.00, pursuant to S. Ct. R. Civ. P. 11, 37(a)(4)(A) and 26(f), is just.
Mr. Carroll is ordered to pay the aforesaid sanctions within 30 days and shall provide the Court with an affidavit of compliance upon making such payment.
Mr. Carroll is further ordered to deliver a copy of this decision to his clients in this case, their risk managers and insurers within 30 days and to provide the Court with an affidavit of compliance upon doing same.
Counsel shall prepare an appropriate order for entry.
[1] See infra, n. 11.
[2] There is some dispute the substance of a phone call that took place between an Mr. Carroll's junior associate and Plaintiffs' counsel, Michael Eskey. The associate alleges that Mr. Eskey was asked about the motion, but refused to discuss it saying "we have nothing to discuss." (Tr. at 55 (Oct. 3, 2003)). Mr. Eskey, however, alleges that he raised the issue and that, when Mr. Carroll's associate responded that he would discuss it with Mr. Carroll, Eskey questioned "[w]hat's to discuss . . . you need to, you know, give us something here." Id. at 53-55. Mr. Eskey alleges that the associate followed up that conversation, after purportedly conferring with Mr. Carroll, by affirming the firm's intent to oppose the motion. Overall, the circumstances support Eskey's view of the conversation or, at least, suggest a willingness on Mr. Carroll's part to seize on Eskey's expression of frustration as a further opportunity to avoid compliance with the discovery requests. (The resolution of this dispute is a factual question involving credibility and is thus for the Court to decide. See S.Ct.R.Civ.P. 37(4)(A) (sanctions awarded "unlessthe court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery . . .") (emphasis added).
[3] At the Court's prompting, Plaintiffs came to file their renewed motion in writing along with an affidavit attesting to the actual expenses incurred in making the motion to compel.
[4] Out of concern that Mr. Carroll's client might have some legitimate objections and in light of the fact that the materials seemed to be forthcoming, this Court, on August 20th, granted Mr. Carroll additional time in which to adequately respond either by providing the requesting information or by submitting proper objections, or both. (See Tr. at 3 (Aug. 6, 2003) (extending hearing date); Tr. at 12 (Aug. 20, 2003) andOrder (Aug. 27, 2003) (striking objections and responses and allowing defendant until August 29, 2003 to respond and/or object)).
[5] A responding party must exercise good faith in responding to a discovery request. See Zaino v. Zaino, 818 A.2d 630, 640-41 (R.I. 2003). Indeed, absent such an obligation, the requesting party's Rule 37(a)(2) duty, i.e., to confer with opposing counsel in order to secure the information sought without court action, would be nugatory.
[6] Notably, in the case of Kelvey v. Coughlin 625 A2d 775 (R.I. 1993), Mr. Carroll was held to be in clear violation of Rule 26(b)(1) and sanctions were imposed as a result of his improper comments, objections and instructions made during a deposition. In that case, Mr. Carroll maintained that his client should not have to respond to discovery questions until those questions were properly framed. The Rhode Island Supreme Court rejected Mr. Carroll's argument and held that his conduct in interfering with the deposition was indefensible and utterly at variance with the discovery provisions of the Rules of Civil Procedure." Id.
[7] "A party is charged with knowledge of what its agents know, or what is in records available to it. . . ." 8A Charles A. Wright Arthur R. Miller, Federal Practice and Procedure § 2177 (1994), pp. 318-19.
[8] To be sure, though, "the Rules also preclude proponents of discovery from wielding the discovery process as a club by propounding requests compelling the recipient to assume an excessive burden."Smithkline Beecham Corp. v. Apotex Corp., 2000 U.S. Dist. LEXIS 667 at 27 (N.D. Ill. 2000) (citing United States v. District Council of New YorkCity, 1992 U.S. Dist. LEXIS 12307, 1992 WL 208284 at *15 (S.D.N.Y. 1992)). Thus, were the scope of a discovery request is so broad that there is no reasonable interpretation that would render it unobjectionable, or is so imprecise that the responding party is left to guess whether a particular document or object is within the scope of the question, the party may raise a valid objection.
[9] Although our Supreme Court has stated that where a claim of privilege is made the objecting party need not first ascertain the existence of the documents, D'Amario, supra, that case dealt with a request for a specific document, and not for a defined category of documents, as here. Further, the Court noted that where the objection is not well grounded, sanctions are appropriate. 686 A.2d at 86.
[10] Rule 26(f)(1) provides that an attorney's signature constitutes a certification that the objection is "consistent with these rules. . . ." and it allows for sanctions for violations of the certification requirements. Logically, "these rules" include Rule 26(b)(5). If Rule 26(f)(1) were not interpreted to allow a court to award fees for a party's complete and utter failure to provide an objection in the formrequired by Rule 26(b)(5), Rule 26(f)(1) would be all but meaningless. Such an interpretation would fly in the face of the plain language of the Rule and, in fact, would require a motion to compel for the Rule to have any definite effect. A party would thereby be permitted to delay compliance with a valid discovery request by asserting that the materials are privileged and then awaiting a motion to compel — precisely the practice that is at issue in the instant case.
[11] Rule 26(f) requires that at least one attorney of record sign every discovery request, response, or objection, and states in relevant part that:
 "The signature of the attorney . . . constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the request, response, or objection, is:
 (1) Consistent with these rules and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.
 (2) Not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."
In the event of a violation, the rule provides for "an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including reasonable attorney's fees," either upon motion or the court's own initiative. The sanction may be imposed upon the represented party or the person who made the certification. Id.
Rule 26(f), and not Rule 11, is applicable for assessing compliance with discovery requests and any resulting sanctions. D'Amario,686 A.2d at 85. Nonetheless, the duties established by Rule 26(f) are virtually identical to those provided for in Rule 11. Like Rule 26(f), Rule 11 provides that the signing party certifies that the relevant document "is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."
[12] The one possible exception is found in Request # 5, which sought "Copies of all liability insurance policies in effect October/November 1999 including but not limited to umbrella, excess and catastrophic coverage." Mr. Carroll responded that this request was overbroad, but, unlike the other responses, provided an explanation, to wit: "the term `all general liability insurance policies' would include general liability policies and such items that would have no relevance to the issues involved in this matter. In addition, there may be policies of insurance applicable to individuals that would have no relationship to the issues involved." Nonetheless, Mr. Carroll's response to Request #5 illustrates that he indeed is aware of the proper way to respond to discovery request believed to be overbroad and knows how one should go about providing the requisite explanation in the context of such an objection.
[13] Mr. Carroll denied that any attempt to obtain compliance was made prior to August 5, 2003, See Tr. at 2 (Aug. 6, 2003), Tr. at 38-39 (Aug.20, 2003). However, it was his associate who presented the court with a copy of Plaintiffs' July 16, 2003 letter. (Tr. at 29 (Oct. 3, 2003)).
[14] Pursuant to Rule 37(d), if a responding party fails to adequately state the reason for an objection, he or she may be held to have waived the objections, including those based on privilege. See 8A Wright and Miller, Federal Practice and Procedure §§ 2016.1, 2213 (1994); Rivera v.Kmart Corp., 190 F.R.D. 298, 300 (D.P.R. 2000) (citing Marx v. Kelly, Hart Hallman, P.C., 929 F.2d 8, 12 (1st Cir. 1991).
[15] See An Open Letter to Rhode Islanders From the Doctors of RhodeIsland, Rhode Island Medical Society, Warwick Beacon, 1/23/03.
[16] A written decision has been filed in Donegan, simultaneously with the instant decision, in connection with Donegan's motions for sanctions.
[17] In the medical setting "unwritten records" could include a variety of things such as X-rays and other diagnostic images or graphics, electronic data and the like. When Request #22 is read in its entirety, Plaintiffs' meaning in propounding it becomes obvious.
[18] It is clear to this Court that Response #22 — and, indeed, the entire Response . . . is in part a reflection of Mr. Carroll's firm's attitude toward Plaintiff's counsel's firm. These attorneys often appear on opposite sides in matters before the courts of this state and the tension that exists between them is no secret. (See Tr. at 9 (Aug. 20, 2003)). The record of the hearings in this matter also reveals other examples of Mr. Carroll's history of dealings with Plaintiffs' counsel's firm. (See Tr. at 32-35, 43-44 (Oct. 3, 2003)). Most relevant to this case, it was represented to the Court by Plaintiffs' counsel that Mr. Carroll's firm has at least twice been sanctioned in connection with cases involving plaintiffs' attorneys' firm. In Chapman v. LandmarkMedical Center, PC 1996-5763, the Court granted sanctions against Mr. Carroll for attempting to avoid responding certain discovery requests. Similarly, in Parrella v. Ryvicker, PC 2001-0943, although a written order never entered, the case having settled instead, the Court struck Mr. Carroll's unsupported assertions of misconduct, i.e. that the plaintiff's complaint, as amended by leave of Court, was ". . . a violation of Rule of Civil Procedure 11 and a violation of the frivolous action statute, so-called". Although sanctions are appropriate in this case without regard to this history, the Court is nonetheless mindful that sanctions are intended, in part, to deter repetition of abusive behavior.